IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KEVIN DEWAYNE KULP                                                                                    PLAINTIFF

    v.    Civil No. 2:11-cv-02207-JRM

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                        DEFENDANT

## MEMORANDUM OPINION

### I. Factual and Procedural Background

  Plaintiff, Kevin DeWayne Kulp, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

  Plaintiff protectively filed his DIB and SSI applications on January 7, 2010, and November 10, 2009, respectively, alleging disability as of April 15, 2009, due to status post left second and third finger amputation, hepatitis C, depression, and arthritis. Tr. 10, 172. On the alleged onset date, Plaintiff was forty-five years old with a high school education. Tr. 20, 59, 173. He has past relevant work as a construction laborer, welder, carpenter, and roofer. Tr. 20, 181-188.

  Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 84-90, 92-96. At Plaintiff's request, an administrative hearing was held on January 6, 2011. Tr. 56-77. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on February 25, 2011, finding Plaintiff was not disabled within the meaning of the Act. Tr. 7-21. Subsequently, the Appeals Council denied Plaintiff's Request for Review on September 1, 2011,

thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of that decision.

**II.     Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the

regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### III.  ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since April 15, 2009, the alleged onset date. Tr. 12. At step two, the ALJ found Plaintiff suffers from arthritis, residual effects from a remote left hand 2nd and 3rd finger amputation with reattachment, hepatitis C, and depressive disorder, which he considered severe impairments under the Act. Tr. 12-13. At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 13-15.

At step four, the ALJ found Plaintiff has the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with only occasional fingering, handling, and repetitive flexion/extension of the wrist with his nondominant hand, and where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, with few variables and little judgment required, and the supervision required is simple, direct, and concrete. Tr. 15-20.

With these limitations, the ALJ determined Plaintiff could not perform his past relevant work. Tr. 20. After receiving vocational expert interrogatories, the ALJ found jobs existing in

significant numbers in the national economy that Plaintiff could perform.[1]  Tr. 21, 30, 228. Accordingly, the ALJ determined Plaintiff was not under a disability from April 15, 2009, the alleged onset date, through February 25, 2011, the date of the administrative decision.  Tr. 21.

## IV.    Discussion

On appeal, Plaintiff contends the ALJ erred by: (A) improperly determining his RFC; (B) improperly evaluating the opinion evidence; and (C) discrediting his subjective complaints. *See* Pl.'s Br. 15-22.  For reasons discussed below, the undersigned finds that substantial evidence supports the ALJ's determination.

### A.  RFC Assessment

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination. *See* Pl.'s Br. 15-18.  At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC.  *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).   A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination.

---

[1] The ALJ determined Plaintiff could perform the requirements of representative occupations such as polystyrene molding machine tender, of which there are 1,400 jobs in Arkansas and 60,000 jobs nationally, and cleaner, housekeeping, hotel/motel, of which there are 2,300 jobs in Arkansas and 245,000 jobs nationally.  Tr. 21.

*Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

        1. <u>Physical Impairments</u>

Plaintiff sustained a significant table saw injury to his left hand on March 9, 2005. Tr. 239. As a result, Plaintiff underwent revascularization of the index and long fingers, as well as tendon repairs and internal fixation of the bone fractures. Tr. 241. Plaintiff required repeat internal fixation of the index and long finger proximal phalanx fractures and a tendon repair of the long finger. Tr. 241. He underwent hardware removal of the left index and long fingers on March 23, 2005. Tr. 241. At that time, Plaintiff's surgeon, Dr. Ruffin, did not feel that Plaintiff's hand function would significantly improve with any further surgery of the tendons, nerves, or arteries. Tr. 241.

On April 8, 2008, Plaintiff saw Michael M. Moore, M.D., with complaints of pain and numbness, cramping sensations in the left hand, pain in the left long finger PIP joint, and cold intolerance. Tr. 241. On examination, there were obvious deformities of the index and long fingers on the left hand. Tr. 242. Tinel's and Phalen's tests were positive. Tr. 242. Plaintiff had decreased range of motion in both his left index and long fingers. Tr. 242. Grip strength averaged thirty pounds on the left and pinch strength averaged twelve pounds on the left. Tr. 243. X-ray imaging revealed post-traumatic degenerative changes of the left long finger PIP joint. Tr. 239, 243. Dr. Moore found that Plaintiff's symptoms were possibly related to post-traumatic carpal tunnel syndrome, post-traumatic degenerative arthritis of the left long finger PIP joint, and cold intolerance. Tr. 243.

Subsequent nerve conduction and EMG studies did not reveal any evidence of carpal tunnel syndrome. Tr. 239. Dr. Moore believed Plaintiff would benefit from conservative treatment, and gave Plaintiff a left carpal tunnel pain injection, a carpal tunnel splint, and a prescription for

Darvocet. Tr. 239.

In a Physical RFC Assessment dated April 26, 2010, Bill F. Payne, M.D., an agency specialist, reviewed Plaintiff's medical records and determined he would be capable of light work, with his left upper extremity used only as an assistive device. Tr. 307.

On August 16, 2010, Plaintiff saw Tedd Lennard, M.D., for a disability evaluation. Tr. 337-341. Dr. Lennard noted that Plaintiff's left second and third digits were swollen and disfigured, and the PIP and DIP joints of these fingers were fixed in a neutral position. Tr. 341. He determined Plaintiff would have difficulty with left hand fine motor tasks, grasping, and repetitive left hand activities. Tr. 341. He found no other limitations. Tr. 341.

At issue is the extent Plaintiff is capable of using his left hand. Dr. Moore found that Plaintiff had significant limitations in reaching, handling, or fingering, and could not use his left hand to grasp, turn, or twist objects, or for fine manipulations. Tr. 257. Dr. Payne found that Plaintiff could only use his left hand as an assistive device. Tr. 307. Dr. Lennard found that Plaintiff would have difficulty with left hand fine motor tasks, grasping, and repetitive left hand activities. Tr. 341. In his RFC Assessment, the ALJ limited Plaintiff to light work with occasional fingering, handling, and repetitive flexion/extension of his left wrist. Tr. 15-20. "Occasional" means up to one-third of the time.

The Commissioner submits that the opinions of Plaintiff's physicians are fairly consistent with one another, and the undersigned agrees. Regardless, "it is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari,* 274 F.3d 1211, 1219 (8th Cir. 2001). Of importance is the fact that Plaintiff continued to work for four years following his 2005 hand injury. Tr. 61-62. This evidence negates a conclusion that

-6-

Plaintiff is incapable of using his left hand in any capacity. Although it is clear that Plaintiff has significant limitations concerning the use of his left hand, the evidence does not support a finding more restrictive than as determined by the ALJ. As such, the undersigned concludes that substantial evidence supports the ALJ's physical RFC determination.

    2. <u>Mental Impairments</u>

Plaintiff reports a history of depression, aggression, and mood swings. On April 14, 2010, Plaintiff saw Nancy J. Toombs, Ph.D., for a consultative mental evaluation. Tr. 288-293. Dr. Toombs diagnosed Plaintiff with depressive disorder not otherwise specified, alcohol and cannabis abuse, and poly-drug dependency in remission. Tr. 291. She estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 50. Tr. 291. Dr. Toombs found that Plaintiff could see to all activities of daily living, socialize in an adequate manner, and communicate his needs effectively. Tr. 291. She determined Plaintiff had an adequate ability to cope with the cognitive demands of work tasks and was able to follow instructions and directions and perform a simple repetitive tasks. Tr. 292. She further found that Plaintiff had adequate concentration, was not distractable or inattentive, and had good task persistence. Tr. 292. Dr. Toombs opined that Plaintiff may need extra time to complete complex tasks. Tr. 292. However, she noted that Plaintiff was not working due to physical issues and not mental health. Tr. 292.

On April 27, 2010, Winston Brown, M.D., an agency consultant, reviewed Plaintiff's medical records and determined he was capable of unskilled work. Tr. 316-319.

Plaintiff received voluntary inpatient treatment at the VA Medical Center from September 15, 2010, through September 17, 2010, for unstable mood with explosive anger and aggression. Tr. 369-370. Notably, Plaintiff's hospitalization occurred following an unsuccessful trial of Quetiapine.

Tr. 458. Carol Ann Phillips, M.D., diagnosed Plaintiff with organic mood disorder secondary to seizures/traumatic brain injury, polysubstance dependence in partial remission, opiate dependence in remission, cannabis abuse, tobacco use disorder, and personality disorder with cluster B traits. Tr. 368. Plaintiff was discharged with prescriptions for Trazodone, Carbamazepine, and Mirtazapine. Tr. 369.

Following Plaintiff's discharge, he received outpatient counseling from September 2010 through November 2010. Tr. 405, 415, 441-442, 449-450, 463. Tori Harris, a licensed clinical social worker, diagnosed Plaintiff with major depressive disorder and bipolar disorder. Tr. 449-450.

After considering the evidence of record, the ALJ determined Plaintiff is capable of performing work in which interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, with few variables and little judgment required, and supervision is simple, direct, and concrete. Tr. 15-20.

Plaintiff submits that the ALJ's RFC assessment is inconsistent with the opinion of Dr. Brown. Tr. 316-319. However, the undersigned notes that Dr. Brown found only moderate limitations in Plaintiff's functional abilities and concluded that he could perform unskilled work. Tr. 318. In fact, the ALJ's mental RFC determination is almost identical to Dr. Brown's conclusion. As such, Plaintiff's argument has no merit.

  B. <u>Treating Physician's Opinion</u>

Plaintiff contends that the ALJ should have adopted Dr. Moore's RFC Assessment in its entirety. *See* Pl.'s Br. 18-20. A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record. *Tilley v. Astrue*, 580 F.3d

675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).  The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling.  *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).  A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013).  In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion.  20 C.F.R. § 404.1527(d)(2).

On October 31, 2009, Dr. Moore completed a Physical RFC Questionnaire, in which he indicated that Plaintiff would have permanent minimal function of the left hand.  Tr. 253-257.  Dr. Moore found that Plaintiff could sit and/or stand/walk for at least six hours in an eight-hour workday, occasionally lift less than ten pounds, and rarely lift ten pounds, but could never climb ladders.  Tr. 255-256.  He further determined Plaintiff had significant limitations in reaching, handling, or fingering, and could not use his left hand to grasp, turn, or twist objects, or for fine manipulations.  Tr. 257.  He found that Plaintiff would miss more than four work days per month as a result of his impairments.  Tr. 257.

The ALJ determined that Dr. Moore's opinion was largely supported by the medical evidence and afforded it great weight.  Tr. 19.  However, the ALJ did not adopt Dr. Moore's opinion that Plaintiff would miss work four or more days per month, noting that this limitation was not supported by the medical evidence and appeared to be based largely on Plaintiff's subjective complaints.  Tr. 19.

Substantial evidence supports the ALJ's analysis of the opinion evidence.  Notably, although Dr. Moore is considered a treating physician, he only saw Plaintiff on two occasions and thus did

not have a significant treating relationship. As a result, his opinion concerning the amount of time Plaintiff would likely miss work appears to be more of a subjective estimate rather than a medical opinion supported by objective findings. As such, the undersigned cannot conclude that the ALJ erred in his treatment of Dr. Moore's opinion.

### C. Subjective Complaints

Finally, Plaintiff alleges the ALJ improperly dismissed his subjective complaints. *See* Pl.'s Br. 20-21. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). Contrary to Plaintiff's assertion, the ALJ properly considered his subjective complaints and dismissed them for legally sufficient reasons. First, the medical

evidence does not support Plaintiff's allegations of right hand pain. X-rays of Plaintiff's right hand revealed *possible* post-traumatic changes involving the distal aspect of the fifth metatarsal. Tr. 272. However, physical examinations of Plaintiff's right hand were unremarkable. Tr. 297-298, 340-341. Additionally, the undersigned can find no evidence that Plaintiff complained of pain or limitation in his right hand. *See Frederickson v. Barnhard,* 359 F.3d 972, 976 (8th Cir. 2004) (ALJ properly considered lack of evidence that claimant had complained of pain to his physicians).

With regard to Plaintiff's left hand impairment, the ALJ properly considered evidence that Plaintiff worked for a significant period of time following his injury. *See Gregg v. Barnhart,* 354 F.3d 710, 713 (8th Cir. 2003) (claimant's ability to work part-time was inconsistent with finding of total disability); *Browning v. Sullivan,* 958 F.2d 817, 823 (8th Cir. 1992) (claimant worked for eight years following her first prescription); *Logston v. Astrue,* 566 F. Supp. 2d 945, 962 (S.D. Iowa 2008) (claimant continued to work for several months following her injury). Additionally, Dr. Lennard noted that Plaintiff had grease under his fingernails during physical examination, which implies that Plaintiff's activities were less limited than he originally reported. *Guilliams v. Barnhard,* 393 F.3d 798, 802 (8th Cir. 2005) (physician noted that claimant's hands were calloused and greasy at the time of examination, indicating significant daily activities). Finally, the ALJ found that Plaintiff's subjective complaints were simply inconsistent with the objective evidence in the record. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints).

Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("we defer to an ALJ's credibility determinations if they are

supported by valid reasons and substantial evidence"). For these reasons, substantial evidence supports the ALJ's credibility analysis.

**V.    Conclusion**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 10th day of January 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE